UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-80713-HURLEY/HOPKINS

BROADCAST MUSIC, INC, et al.,

      Plaintiffs,

v.

S. T. COMPLEX, LLC, d/b/a Ultra
Lounge/Bahama Joe's, et al.

      Defendants.
_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT**

**THIS CAUSE** is before the court upon Plaintiffs' motion for final default judgment [DE # 13]. On November 15, 2010, the court held an evidentiary hearing (the "Hearing") on the motion. Having carefully reviewed the evidence submitted at the Hearing, the Court makes the following findings of facts and conclusions of law.

    **I.**    **FINDINGS OF FACT**

    1.    Plaintiff, Broadcast Music, Inc. ("BMI"), is a corporation organized and existing under the laws of the State of New York. BMI's principal place of business is 7 World Trade Center, 250 Greenwich Street, New York, NY 10007-0030.

    2.    The other Plaintiffs in this matter are Amazement Music, EMI Virgin Songs, Inc. d/b/a EMI Longitude Music, MJ Publishing Trust d/b/a Miran Publishing, and Songs of Universal, Inc. These Plaintiffs (referred to as the "other Plaintiffs") are own the copyrights of the musical compositions that are the subject of this lawsuit.

3. BMI has been granted the right to license the public performance rights of approximately 6.5 million copyrighted musical compositions (the "BMI Repertoire"), including those owned by the other Plaintiffs.

4. Defendant S.T. Complex, LLC ("S.T. Complex") is a Florida limited liability company that operates and controls an establishment known as Ultra Lounge/Bahama Joe's, located at 313 Clematis Street, West Palm Beach, Florida (the "Establishment"). In connection with the operation of the Establishment, Defendant S.T. Complex publicly performs musical compositions and/or causes musical compositions to be publicly performed, including those in the BMI Repertoire.

5. Defendant S.T. Complex has a direct financial interest in the Establishment.

6. Defendant Frank Garcia is an officer of Defendant S. T. Complex and is primarily responsibility for the operation and management of S.T. Complex and the Establishment. Defendant Garcia has a direct financial interest in S.T. Complex and the Establishment.

7. On December 12, 2008, Defendants performed and/or caused to be publicly performed the following musical compositions without license or permission to do so: *Before I Let Go*, Copyright Registration No. PA 106-672; *Boogie Shoes*, Copyright Registration Nos. Eu 606202, PA 10-277; and *Don't Stop a/k/a Don't Stop Till You Get Enough*, Copyright Registration Nos. Pau 114-601, Pau 240-861.

8. On May 30, 2009, Defendants performed and/or caused to be publicly performed the following musical composition without license or permission to do so: *Children's Story*, Copyright Registration Nos. PA 449-656.

9. At the time of the infringements, BMI was (and still is) the licensor of the public performance rights in the musical compositions.

10. On or about June 15, 2010, Plaintiffs filed a copyright infringement action against Defendants, S.T. Complex, LLC d/b/a Ultra Lounge/Bahama Joe's and Frank Garcia, alleging that Defendants infringed Plaintiffs' copyrights in four BMI titles in the BMI Repertoire through the unauthorized performance of these titles at the Establishment.

11. Defendants were properly served with the Complaint, but failed to respond. On August 5, 2010, the Clerk entered defaults against Defendants.

12. On November 15, 2010, the Court held an evidentiary hearing. During the hearing, Paul Knipler, BMI's Senior Director of General Licensing, testified that, before filing suit, BMI sent Defendants dozens of letters and called them over sixty-four telephone times. The letters were introduced and admitted into evidence.

13. On May 2, 2005, BMI began sending letters and making telephone calls to Defendants in an effort to educate them about copyright law and the necessity of obtaining a performance license. BMI continued these efforts through September 3, 2009.

14. After Defendants failed to purchase the required performance license, BMI began sending Defendants letters demanding that they immediately cease and desist publicly performing any and all musical compositions in the BMI Repertoire (the "BMI Cease and Desist Letters").

15. The BMI Cease and Desist Letters predate Defendants' public performance of the copyrighted works identified in Paragraphs 8 and 9 above. Indeed, the BMI Cease and Desist Letters, which were signed by Mr. Knipler on October 22, 2008 and April 22, 2009, went sent just before the infringements that occurred on December 12, 2008 and May 30, 2009.

16. As a direct result of Defendants' failure to obtain a license, Plaintiffs lost licensing revenues in the amount of $26,910.00.

17.     Defendants were given notice of the November 15, 2010 evidentiary hearing on Plaintiffs' Motion for Final Default Judgment, but failed to appear.

## II.     CONCLUSIONS OF LAW

18.     The defaults entered against the Defendants, S.T. Complex and Frank Garcia are hereby confirmed in all respects. As a result of the defaults, Defendants are deemed to have "admit[ed] the plaintiff[s'] well-pleaded allegations of fact." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

   *a.     Copyright Infringement*

19.     To establish a prima facie case of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010). Both of these elements were properly pled in the complaint. *See* Compl. ¶ 19 (alleging that plaintiffs own or license the four musical compositions at issue) and ¶ 20 (alleging that defendants copied (by way of performing) the musical compositions).

20.     Accordingly, the court finds that defendants willfully infringed each of the four separate copyrighted musical compositions by allowing or causing the musical compositions to be publicly performed at the Establishment without Plaintiffs' permission or consent.

21.     Frank Garcia is individually liable for the infringement of each of the four (4) separate copyrighted musical compositions because, as the person with the primary responsibility for the operation and management of S.T. Complex and the Establishment, he had the right and ability to supervise the activities of S. T. Complex and the Establishment and had a direct financial interest in S.T. Complex and the Establishment.

22.     The Copyright Act allows an aggrieved party to elect either actual or statutory damages.  17 U.S.C. § 504.  Statutory damages are usually "awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir.1990). Statutory damages are "especially appropriate in default judgment cases." *UMG Recordings, Inc. v. Roque*, 2008 WL 2844022, at * 2 (S.D. Fla. July 23, 2008).  The court has discretion to award between $750 and $30,000 in statutory damages per infringement.  17 U.S.C. § 504(c). Where, as here, the factual allegations establish that the infringement was willful, the court my increase damages to $150,000 for each infringement.

23.     The "employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case." *Douglas v. Cunningham*, 294 U.S. 207, 210 (1935).  The court "may take into account the attitude and conduct of the parties [and] should consider both the willfulness of the defendants' conduct and the deterrent value of the sanction imposed." *Network Productions*, 902 F.2d at 852 (citations and quotations omitted).

24.     Plaintiffs have requested an award of $7,000.00 in statutory damages for each of the four separate infringements, for a total of $28,000.

25.     Having carefully considered the evidence, the court finds that Plaintiffs' request is reasonable.  The record demonstrates that the defendants' infringement was both knowing and willful.  Before filing suit, plaintiffs contacted the Establishment sixty-four times and spoke with Mr. Garcia personally at least six times about the infringement and the possibility of a license agreement.  Plaintiffs also sent dozens of letters, including cease-and-desist letters.  Despite plaintiffs' warnings, defendants continued to publically perform the musical compositions.  By doing so, defendants avoided paying $26,910 in licensing fees, and pefendants lost licensing fees

5

in an equal amount. A penalty that exceeds the amount of fees avoided by defendants is appropriate to deter future infringing acts. Thus, the court finds that plaintiffs are entitled to $28,000 in statutory damages. *See Milk Money Music*, 2009 WL 4800272 (awarding $7,000 in statutory damages per infringement, for a total of $28,000); *Disney Enters. Inc. v. Law*, 2008 WL 203393, at *4 (M.D. Fla. Jan. 23, 2008) (awarding $28,000 in statutory damages); *Universal City Studios Production LLLP v. Howell*, 2007 WL 853471, at * 2 (M.D. Fla. Mar. 16, 2007) (awarding $6,000 in statutory damages).

    b.    *Attorneys' Fees & Costs*

26. Pursuant to 17 U.S.C. § 505, the court may award costs and attorneys' fees to the Plaintiffs as the prevailing party. The court finds that plaintiffs' costs ($479) and fees ($5,233.50) are reasonable and recoverable.

    c.    *Injunctive Relief*

27. Section 502 of the Copyright Act permits the entry of a permanent injunction to prevent further violations of copyrighted works. Pursuant to §502, Plaintiffs have requested that Defendants be permanently enjoined from performing musical compositions in the BMI Repertoire and/or allowing or causing such compositions to be performed without Plaintiffs' consent or authorization.

28. A district court may grant injunctive relief only if the moving party shows that: (1) it has achieved actual success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc) (per curiam). Permanent injunctions "are regularly issued pursuant to the [Copyright Act, given]

Order Granting Plaintiffs' Motion for Final Default Judgment
Broadcast Music, Inc. v. S.T. Complex, et al.
Case No. 10-CV-80713-HURLEY/HOPKINS

the public interest is the interest in upholding copyright protections." *Arista Recordings, Inc. v. Beker Enters., Inc.*, 298 F.Supp.2d 1310, 1314 (S.D. Fla. 2003) (citations and quotations omitted).

29.     After carefully reviewing the evidence, the Court finds that an permanent injunction is warranted, in light of defendants' willful infringement and the public's interest in strong copyright protection.

## CONCLUSION

For the reasons given above, Plaintiffs' motion for final default judgment [DE # 13] is **GRANTED**. The court finds that Defendants willfully infringed Plaintiffs' copyrighted musical compositions. The court will award Plaintiffs $28,000 in statutory damages and $5,712.50 in attorneys' fees and costs, and will enjoin Defendants from continuing to infringe Plaintiffs' copyrighted musical compositions. Pursuant to Federal Rule of Civil Procedure 58, the court will enter final judgment by separate order

**DONE** AND **ORDERED** in chambers at the United States Courthouse, West Palm Beach, Florida, this 29th day of November, 2010.

_____
DANIEL T. K. HURLEY
U.S. District Judge

*Copies provided to counsel of record and all pro se parties*